United States District Court
Southern District of Texas
**ENTERED**
July 27, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JENNIFER OUABDERHM and DANIEL BUSH, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-19-1429 |
| THE MONEY SOURCE, INC., | § § § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION GRANTING SUMMARY JUDGMENT**

Jennifer Ouabderhm wants to avoid the foreclosure of her home. She sued The Money Source, Inc., the mortgage servicer, asserting negligent misrepresentation, violations of the Deed of Trust and the Texas Property Code, and inequitable conduct. The Money Source moved for summary judgment, arguing that the record shows that Ouabderhm cannot recover on her negligent misrepresentation claim or on her claim that The Money Source did not properly notify Ouabderhm of its intent to accelerate the loan and foreclose. After reviewing the pleadings; the motion, response, and reply; the record evidence; and the applicable law, the court grants The Money Source's summary judgment motion. Final judgment is separately entered. The reasons for these rulings are explained in detail below.

**I.     Background**

In August 2016, Jennifer Ouabderhm and Daniel Bush obtained a loan from Houstonian Mortgage Group, Inc. to buy a home in Willis, Texas. (Docket Entry No. 14-1 at 8). They signed a Promissory Note requiring them to pay $972.90 on the first day of each month for 30 years, beginning on October 1, 2016. (*Id.*). The Note was secured by a Deed of Trust that

Ouabderhm and Bush also signed. (Docket Entry No. 1 at 13). The Money Source began servicing Ouabderhm's and Bush's mortgage in October 2016. (Docket Entry No. 14-1 at 2).

Ouabderhm and Bush failed to make their mortgage payments for October and November 2016. (*Id.*). In December 2016, Ouabderhm asked The Money Source for mortgage assistance, because Bush had lost his job and they did not have enough income to make the monthly payments. (*Id.* at 3). The Money Source granted Ouabderhm and Bush a temporary forbearance in February 2017, requiring them to pay $612.43 each month from March to August 2017. (*Id.* at 12–16). Ouabderhm and Bush made the reduced payments, but the mortgage remained in default. (Docket Entry No. 14 at 7).

In September 2017, The Money Source sent Ouabderhm and Bush notice by certified mail that the couple remained in default, that The Money Source intended to accelerate the loan, and that if Ouabderhm and Bush did not cure the default, The Money Source would foreclose on the property. (Docket Entry No. 14-1 at 19–21). Ouabderhm and Bush applied for another forbearance, which The Money Source granted in October 2017. (*Id.* at 25). Under the second forbearance, Ouabderhm and Bush were not required to make a mortgage payment until February 1, 2018. (*Id.* at 26).

In March 2018, Ouabderhm applied for an extension of the second forbearance. (Docket Entry No. 15-1 at 22). The Money Source denied the request, explaining that the "application does not meet program guidelines." (Docket Entry No. 14-1 at 30). The Money Source sent Ouabderhm and Bush a letter notifying them that they were "in default" and that the company had "initat[ed] foreclosure proceedings to seek resolution of the loan balance." (Docket Entry No. 15-4 at 5). In June 2018, The Money Source's substitute trustee filed a notice of trustee's sale, scheduling the foreclosure of Ouabderhm's and Bush's property for August 7, 2018.

(Docket Entry No. 14-2 at 24). The Money Source denied Ouabderhm's application for loss-mitigation assistance because it did not have sufficient documentation of Ouabderhm's and Bush's income. (Docket Entry No. 14-1 at 33).

In August 2018, The Money Source's substitute trustee foreclosed on Ouabderhm's and Bush's home. (Docket Entry No. 14 at 11). The Money Source, as the foreclosing beneficiary and purchaser at the sale, obtained a state-court judgment that Ouabderhm and Bush were no longer entitled to possess the home. (Docket Entry No. 4-1 at 19). The judgment required Ouabderhm and Bush to post a $1,000 bond to file an appeal. (*Id.*).

Instead of posting the bond and appealing, Ouabderhm sued The Money Source in state court on the same day the judgment was entered, alleging fraud, negligent misrepresentation, "[non]compliance with Texas Sale Procedures," and wrongful possession of collateral. (Docket Entry No. 1 at 10–11). The Money Source timely removed. (Docket Entry No. 1). Ouabderhm moved for a temporary restraining order to enjoin the state-court judgment. (Docket Entry No. 4). The court denied the motion and directed the parties to exchange loan documents and communications. (Docket Entry No. 9). The Money Source moved for summary judgment, arguing that Bush was a necessary party who must be joined under Rule 19, and that no record evidence supported Ouabderhm's claims. (Docket Entry No. 14). The court found that Bush was a necessary party and denied the motion without prejudice, allowing Ouabderhm leave to amend and join Bush. (Docket Entry No. 18).

Ouabderhm and Bush filed a second amended complaint, asserting negligent misrepresentation and wrongful foreclosure claims. They alleged that the sale price of the house was grossly inadequate and that the foreclosure proceedings were defective because The Money Source sent the acceleration notice by certified mail instead of first-class mail, engaged in

3

inequitable conduct toward Ouabderhm, and violated her due process rights. (Docket Entry No. 19). The Money Source again moved for summary judgment, Ouabderhm responded, and The Money Source replied. (Docket Entry Nos. 23, 25, 27).

## II.     The Legal Standard

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd on Behalf of Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282-83 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating that there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (alteration omitted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). The moving party must demonstrate the absence of a genuine issue of material fact, but it need not negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). "If the moving party fails to meet [its] initial burden, the motion must be denied, regardless of the nonmovant's response."

4

*Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate "the precise manner in which" that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019) (quotation omitted). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014) (per curiam)).

**III.   Analysis**

    **A.   Negligent Misrepresentation**

Ouabderhm alleges that The Money Source told her that it had reopened her account, but later denied her a forbearance extension and her loss mitigation request. Under Texas law, the elements of negligent misrepresentation are: "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *LHC Nashua*

*P'Ship, Ltd. v. PDNED Sagamore Nashua, L.L.C.*, 659 F.3d 450, 458 n.8 (5th Cir. 2011) (quoting *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

"The 'false information' contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct." *Roof Sys., Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 439 (Tex. App.—Houston [14th Dist.] 2004) (citing *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)). "A promise to act or not to act in the future cannot form the basis of a negligent misrepresentation claim." *Id.* (citing *Miksch v. Exxon Corp.*, 979 S.W.2d 700, 706 (Tex. App.—Houston [14th Dist.] 1998, pet. denied)). "The plaintiff must prove that the defendant misrepresented an existing fact in the course of the defendant's business." *Id.* Deciding whether a statement is a promise of future conduct rather than an existing fact is a matter of law. *See id.*

The Money Source argues that the alleged false statement—that the company had reopened Ouabderhm's case—is not actionable because it is a promise of future conduct. Even if The Money Source had not reopened the case at the time, it argues, the statement is not what harmed Ouabderhm—it was the decision not to grant her another forbearance or other loan forgiveness or deferral. According to The Money Source, because it never guaranteed that it would approve her forbearance-extension or loss-mitigation requests, Ouabderhm's reliance on the statement of "reopening" was unjustified.

Ouabderhm argues that based on The Money Source's statements, she understood that her file had been reopened and that if she filed the paperwork correctly, the company would approve her requests. Because The Money Source had not reopened her file, Ouabderhm argues, the statement was a false representation of existing fact. Ouabderhm states that in reliance, she took no further action to avoid losing her home, leading to the foreclosure.

6

"Because every element of a negligent misrepresentation claim must be established in order for there to be recovery, the absence of any element is grounds for summary judgment." *Miksch*, 979 S.W.2d at 706 (citing *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977)). The Money Source's alleged statement that it had reopened Ouabderhm's file, when coupled with what Ouabderhm describes as an implication that it was likely to be approved, is not an actionable misrepresentation because the relevant portion promises future performance. *See James v. Wells Fargo Bank, N.A.*, 533 F. App'x 444, 448 (5th Cir. 2013) (quotation omitted) ("[Plaintiff's] claim for negligent misrepresentation fails as a matter of law because the statements at issue—alleged promises that plaintiffs would be eligible for [mortgage assistance] and the foreclosure sale would be postponed—are representations as to conditional future events and promises of future conduct, not statements of existing fact and, under Texas law, promises of future action are not actionable as a negligent-misrepresentation tort."); *Sgroe v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 731, 750 (E.D. Tex. 2013) ("Alleged oral promises that [the defendants] would not foreclose while the loan modification was being reviewed is a promise of future performance, which is not actionable. Moreover, any purported promise by [the d]efendants would have been completely gratuitous and is not actionable because [the d]efendants have no obligation to review [the p]laintiff for a loan modification.").

Summary judgment is granted on the plaintiffs' negligent misrepresentation claim.

**B. Wrongful Foreclosure**

"The elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Collins v. Bayview Loan Servicing, LLC*, 416 S.W.3d 682, 687 n.7 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Sauceda v. GMAC Mortg.*

*Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.). The court stated in its earlier Memorandum and Order that if Ouabderhm asserts a wrongful foreclosure claim, she must amend her complaint to allege facts showing a "grossly inadequate selling price" and a "causal connection between the defect and the grossly inadequate selling price." (Docket Entry No. 18 at 8).

The Money Source argues that the record does not support an inference of an inadequate selling price, because the property sold for $181,050, just 3.1% below the publicly assessed value of $186,820. Ouabderhm responds that the Texas taxing authority's estimate does not accurately reflect fair market value. She provides an independent appraisal of $196,000.

"[A] grossly inadequate price would have to be so little as 'to shock a correct mind.'" *F.D.I.C. v. Blanton*, 918 F.2d 524, 531 (5th Cir. 1990) (quoting *Richardson v. Kent*, 47 S.W.2d 420, 425 (Tex. Civ. App.—Dallas 1932, no writ)). "[I]n Texas, cases finding gross inadequacy typically involve a selling price below sixty percent of the property's value[.]" *Richardson v. Wells Fargo Bank, N.A.*, 873 F. Supp. 2d 800, 813 (N.D. Tex. 2012) (interpreting *Blanton*, 918 F.2d at 531–32). Ouabderhm's property sold for over 95% of the value that her independent appraiser assessed—far above the level that Texas courts have found to be grossly inadequate.

Nor does the record support an inference that the foreclosure proceeding was defective. Ouabderhm first argues that the Deed of Trust required serving the notice of default by first class mail. The Money Source sent notice by certified mail, which she alleges she never received. She argues that the notice was defective as a result.

Paragraph 22 of the Deed of Trust requires the lender to give notice before accelerating the loan. (Docket Entry No. 23-1 at 13). Paragraph 14 provides that "notice to Borrower in connections with this security agreement shall be deemed to have been given to Borrower when

mailed by first class mail or when actually delivered to Borrower's notice if sent by other means." (*Id.* at 11). The Deed also states that "if any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument." (*Id.* at 12).

The Texas Property Code also requires notice in the event of default. Section 51.002(d) of the Texas Property Code provides that "[n]otwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default." TEX. PROP. CODE § 51.002(d). Subsection e states that "[s]ervice of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address." *Id.* § 51.002(e).

Ouabderhm argues that because the Deed of Trust requires notice, the Texas Property Code does not require parties to provide additional notice and so § 51.002(d) is not a "requirement under Applicable Law." Because The Money Source sent the notice by certified mail, Ouabderhm argues that the only way the company could have satisfied the "if sent by other means" condition was if the notice had arrived at Ouabderhm's address. She contends that she never received it.

Ouabderhm's argument ignores the Deed's specific reference to notices required by the Deed that are also "required under Applicable Law." The fact that the Deed requires notice does not mean that the Texas Property Code no longer requires that notice. In these situations, the Deed defers to the requirements of "Applicable Law." The undisputed record evidence shows that The Money Source complied with the applicable law by sending the required notice via

9

certified mail. The same applicable law provides that The Money Source's service was complete when "deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address."

Ouabderhm's assertion that she did not receive the notice does not affect the validity of The Money Source's foreclosure proceeding. *See Clark v. Fed. Deposit Ins. Corp.*, 849 F. Supp. 2d 736, 747 (S.D. Tex. 2011) ("Plaintiffs' objection that they did not receive one or more notices required by law is not relevant. Texas Property Code § 51.002(e) states, 'Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address.' [P]laintiffs have no basis to challenge the validity of the foreclosure.").

Ouabderhm argues that finding service of the notice was effective when sent violates her equal protection rights under Article I, Section 19 of the Texas Constitution, and under the Fourteenth Amendment to the United States Constitution. Courts have addressed these arguments before. When a private entity operating in Texas forecloses on real property, there is "not a sufficiently close nexus between state and challenged action so that the action could be fairly treated as that of the state itself for Fourteenth Amendment purposes." *Barrera v. Sec. Bldg. & Inv. Corp.*, 519 F.2d 1166 (5th Cir. 1975). This lack of state action also bars Ouabderhm's argument under the Texas Constitution. *See Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 89 (Tex. 1997) ("[T]he guarantees of the Texas Bill of Rights generally apply only against the government.").

The record evidence does not present any factual disputes material to determining whether The Money Source's foreclosure proceedings were defective. The Money Source, by complying with the Texas Property Code's provision allowing service of the required notice by

certified mail, properly served Ouabderhm. Nor has Ouabderhm shown a grossly inadequate sales price or alleged a causal connection between the sales price and the alleged procedural defect. Summary judgment is granted on Ouabderhm's wrongful foreclosure claim.

### C. Inequitable Conduct

Ouabderhm alleges that The Money Source engaged in "inequitable conduct" and waived its right to foreclose by stating that it had reopened her case before foreclosing. She seeks a judgment setting aside the foreclosure sale. The Money Source argues that it sent the notice of intent to accelerate and notice of acceleration that Texas law requires, and that Ouabderhm did not tender the amount due, as required to set aside a foreclosure sale.

"[A] lender may lose the right to accelerate if its conduct is 'inconsistent or inequitable.'" *Wilmington Trust, Nat'l Assoc. v. Rob*, 891 F.3d 174, 176 (5th Cir. 2018) (quoting *William J. Schnabel Revocable Living Tr. v. Loredo*, No. 13-13-00297, 2014 WL 4049862, at *5 (Tex. App.—Corpus Christi Aug. 14, 2014, no pet.)). "Texas common law imposes notice requirements before acceleration. In Texas, '[e]ffective acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration.'" *Id.*

"The acceleration of a note can be abandoned 'by agreement or other action of the parties.'" *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015) (citing *Khan v. GBAK Props.*, 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.)). "Abandonment of acceleration has the effect of restoring the contract to its original conditions." *Id.* (quoting Khan, 371 S.W.3d at 353). Texas law frames abandonment of a prior acceleration in waiver terms. *Id.* at 105. "A lender waives its earlier acceleration when it 'put[s] the debtor on notice of its abandonment . . . by requesting payment on less than the full amount of the loan.'" *Id.* at 106 (quoting *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 Fed. App'x 677 (5th Cir.

11

2015)) (a second notice of default informing the plaintiffs that the total payment required to bring their loan current was the past-due amount showed an unequivocal intent to abandon the prior acceleration). When a lender abandons acceleration and later reaccelerates, a "new round of notice" is required. *Wilmington Trust*, 891 F.3d at 177.

In September 2017, The Money Source sent Ouabderhm a letter alerting her to the loan default and telling her to pay $8,793.18 within 30 days to bring the loan current. (Docket Entry No. 14-1 at 19–21). The letter warned: "If you do not cure the default(s) on or before the date specified above, the full outstanding balance of your loan will be accelerated and become due in full." (*Id.*). Ouabderhm then applied for a forbearance, which The Money Source granted, but specified that "[o]ur acceptance and posting of your payment during the forbearance period will not be deemed a waiver of the acceleration of your loan and related activities, including the right to resume or continue foreclosure, and shall not constitute a cure of your mortgage default unless such payments are sufficient to completely cure the default." (*Id.*).

Courts have found that forbearance agreements can abandon acceleration if the agreement "affirm[s] the full amount of the [n]ote was no longer due immediately," and contains no language stating that the lender "retained rights available upon acceleration." *Stewart v. U.S. Bank Nat'l Ass'n*, 107 F. Supp. 3d 705, 710 (S.D. Tex. 2015) (finding abandonment when the forbearance agreement stated that after the forbearance period, the borrower may not have to pay the amount demanded by the notice to accelerate). But here, The Money Source gave no indication that Ouabderhm's payments under the forbearance would cure her default. On the contrary, The Money Source stated that after the forbearance, Ouabderhm would have to pay the amount demanded in the notice of intent and that the forbearance would "not be deemed a waiver

of the acceleration." Undisputed record evidence shows that The Money Source did not waive its right to accelerate and foreclose by its earlier grant of a forbearance.

Ouabderhm argues that correspondence between her and The Money Source's employees about loan modification supports her inequitable conduct claim. Ouabderhm submitted emails and phone records showing that employees discussed loss mitigation with her, and a letter in which she stated that an employee told her that her case had been reopened. (Docket Entry No. 26 at 13, 24, 40–52). None of Ouabderhm's evidence shows that The Money Source intended to accept less than full payment on the loan. Ouabderhm admits that she received a notice from The Money Source that denied her request for loss mitigation. (Docket Entry No. 26 at 54).

Nor does the record show that Ouabderhm offered to tender the full amount due on the loan, as required to set aside a foreclosure sale in Texas. *See, e.g.*, *Saravia v. Benson*, 433 S.W.3d 658, 663 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("Tender of the sum owed on a mortgage debt is a condition precedent to the mortgagor's recovery of title from a mortgagee who is in possession and claims title under a void foreclosure sale."). Ouabderhm has not identified a factual dispute material to determining whether The Money Source waived its right to foreclose.

**IV. Conclusion**

The Money Source's motion for summary judgment, (Docket Entry No. 23), is granted. This case is dismissed, with prejudice. Final judgment is entered by separate order.

SIGNED on July 27, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge